THERESA L. DURO vs. DANIEL H. DURO.

Suffolk. March 7, 1984. — July 30, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Divorce and Separation,* Custody of child, Report of probation officer. *Probate Court,* Report of probation officer. *Words,* "Report."

Reports of Probate Court probation officers made to a probate judge pursuant to G. L. c. 276, § 85B, must be in writing, and litigants must be afforded an opportunity to cross-examine the probation officer on the written report. [578-580]

A judgment awarding custody of two minor children was reversed where the judge, before trial of the matter, had received private oral reports from a probation officer assigned to investigate the case and it was unclear to what extent the judge's decision was based on these reports rather than on evidence presented at the trial. [581]

COMPLAINT for divorce filed in the Suffolk Division of the Probate and Family Court Department on December 8, 1980.

Following entry of judgment nisi, custody proceedings were heard by *Yasi,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Nancy J. Lorenz (Carolyn N. Famiglietti* with her) for the plaintiff.

*Lenahan O'Connell,* for the defendant, submitted a brief.

ABRAMS, J. We hold that, as a matter of statutory interpretation,[1] reports of Probate Court probation officers made to a

---

[1] Because we decide this case on statutory grounds, we do not reach the plaintiff's constitutional challenges to the use of secret oral reports. "A court will ordinarily 'not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. . . . Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.'" *Fazio* v. *Fazio,* 375 Mass. 394, 405 (1978), quoting *Com-*

probate judge, pursuant to G. L. c. 276, § 85B, inserted by St. 1969, c. 771, § 3, must be in writing, and litigants must be afforded the opportunity to cross-examine the probation officer on the written report. In this case, the plaintiff appeals[2] from a judgment awarding custody of two children to her former husband. The plaintiff's principal argument is that she was denied a fair trial before an impartial tribunal because the judge, in the absence of the parties and their counsel, received oral reports from a probation officer assigned to investigate the case.[3] We conclude that the adjudication of custody must be reversed because the judge received extra-record information. We remand for new custody proceedings.

We summarize the facts. On December 8, 1980, the plaintiff filed a complaint seeking a divorce on the ground of cruel and abusive treatment, and custody of the children. The probate judge to whom the case was assigned entered an order on December 22, 1980, granting the plaintiff's motion for temporary custody of the children and the husband's motion for visitation rights. At a pretrial conference on April 13, 1981, the judge designated a probation officer employed in the Probate Court's Family Service Office to investigate an allegation by the plaintiff that the husband was sexually abusing their daughter. The judge also modified the temporary order by making the husband's visitation rights "subject to [Family Service Office] conditions." The probation officer met privately with the judge on May 18, 1981, after interviewing the plaintiff, who was living with the children in her parents' home, and the defendant in his home, and after examining the children

_monwealth_ v. _Bartlett,_ 374 Mass. 744, 748-749 (1978). "Thus, because our conclusions . . . are based on an interpretation and application of [the statute], which results in a holding favorable to [the plaintiff] and dispositive of the case, we believe it is unnecessary to consider or pass on the constitutional questions raised." _Fazio_ v. _Fazio, supra_ at 406.

[2] After the plaintiff's appeal had been docketed in the Appeals Court, we granted her petition for direct appellate review.

[3] Two affidavits submitted with the motion to recuse indicate that the plaintiff was alerted to the judge's private conversations with the probation officer as a result of questions asked by the judge at a pretrial conference referring to facts not introduced in evidence.

and their medical records. Following the meeting, the probation officer, pursuant to the judge's instructions, informed the parties' attorneys that the husband's visitation rights could be exercised at the husband's residence rather than where the children were living.

Subsequently, the judge asked the probation officer to shift the focus of her investigation to the issue of which parent should have custody of the children. On March 3, 1982, the probation officer visited the plaintiff at a house to which she had recently moved with the children. The plaintiff and the children were living in the apartment of a friend pending repairs to an upstairs apartment in which the plaintiff intended to reside. The probation officer spoke privately with the judge on the day following that visit. At a pretrial conference that had been scheduled for March 5, 1982, the judge entered a judgment of divorce nisi and transferred temporary custody of the children to the husband.

On July 7, 1982, the plaintiff filed a motion for recusal alleging that the judge's ex parte communications[4] with the probation officer violated her right to a fair trial by an impartial adjudicator on the basis of evidence presented before all parties. The plaintiff also filed motions requesting that the judge refrain from receiving further ex parte oral reports from the probation officer, and that any future reports be written and made available to counsel. The judge took the motions under advisement, and on July 14, 1982, entered an order scheduling for September 9, 1982, an evidentiary hearing on the motion to recuse.

At the hearing, the probation officer was called to testify concerning her private reports to the judge. She stated that at the meeting preceding the judge's decision to allow visitation

---

[4] The term "ex parte" is typically used to describe communications between the fact finder and a party to a proceeding in the absence of other parties. However, many, if not all, of the fairness and due process concerns raised by such communications are implicated when the fact finder discusses factual matters of the case with a nonparty in the absence of one or more parties. Even if the reports at issue were not, as a technical matter, "ex parte," they constituted extra-record information that deprived the plaintiff of her ability to test adverse evidence by cross-examination or offer evidence in rebuttal.

to take place at the husband's house, she told the judge that the husband's house "was a very good home" and "a very appropriate residence for visitation for the children." She also showed the judge the children's medical records, which, according to the officer, indicated that the plaintiff had submitted their daughter for medical examination as to alleged sexual abuse by the husband, and that "the doctors found [the allegations of sexual abuse] to be untrue."

The officer stated further that, at the meeting preceding the entry of the order transferring temporary custody to the husband, she informed the judge that the plaintiff "had left her family residence; that nobody knew where she was; [that] we had finally located her at her girlfriend's house; that I had made a visit to the house immediately and found the house to be in very poor condition," and that the house "was not appropriate for children." The officer also spoke to the judge concerning one of two daughters born to the plaintiff and the plaintiff's boyfriend following the plaintiff's separation from the husband.[5] The officer informed the judge that the officer had received a telephone call from the boyfriend's mother stating that she (the boyfriend's mother) was caring for the elder granddaughter and that the plaintiff "didn't appear to take too much interest in the child." The officer did not discuss with the plaintiff this telephone call or the officer's disapproval of the house in which the plaintiff was living.[6]

The judge did not rule on the motion to recuse, or on motions filed by the plaintiff on November 23, 1982, and December 5, 1982, seeking a return of temporary custody of the children. The issue of permanent custody was tried before the judge on

[5] The record indicates that the plaintiff and her boyfriend planned to marry when his divorce became final. The custody of their two daughters is not at issue in this case.

[6] At the hearing on the motion to recuse, the probation officer also stated she had two additional private meetings with the judge relative to the husband's request that he be permitted to take the children on a two-week vacation to Arizona, as well as another meeting concerning the case, the substance of which she could not recall.

January 26, 1983, and February 3, 1983.[7] The probation officer was not called as a witness at the trial. The judge entered a judgment, accompanied by findings of fact and conclusions of law, on March 31, 1983, granting custody to the husband and visitation rights to the plaintiff.

The investigations of the probation officer in the instant case took place pursuant to a statutory provision authorizing Probate Court probation officers "to ascertain when requested to do so by the court the moral and general conditions surrounding . . . dependent minor children and [to] report the result of such findings to said court." G. L. c. 276, § 85B, inserted by St. 1969, c. 771, § 3. Although this provision is situated in a statute dealing with proceedings to enforce child support obligations, the parties do not contest the officer's authority under § 85B to investigate matters relating to a custody award. See *Hayden* v. *Hayden,* 15 Mass. App. Ct. 915, 916 (1983). The husband argues, however, that because the statutory language

---

[7] At some point prior to trial, the plaintiff apparently withdrew her motion to recuse. At trial the following colloquy took place:

PLAINTIFF'S COUNSEL: "Why did you withdraw your motion to recuse [the judge]?"

THE PLAINTIFF: "I had two purposes for the same reason. One of them, [the judge] has been on this case for two years. He's been a fair and decent judge. And the other, I would like to have full custody of my two children, because I love my two children."

PLAINTIFF'S COUNSEL: "And what do you mean — what does wanting full custody of your children have to do with withdrawing the motion?"

THE PLAINTIFF: "Well, where [the judge] has been on this case for two years, all right, [the judge] is the law. [The judge] is higher than any of us around here. And where [the judge] has been on this case for two years, where's the sense of removing him?"

The husband contends that the plaintiff, by withdrawing her motion to recuse, waived her right to attack the custody award on the basis of the extra-record communications. We harbor some doubt that the plaintiff's withdrawal of the motion constituted a valid waiver of any existing duty to recuse, compare 28 U.S.C. § 455(e) (Supp. V 1981) (restricting waiver of judge's duty to disqualify himself or herself), but, setting that question to one side, the withdrawal of the motion does not affect the plaintiff's right to attack the influence of extra-record information on the judgment of custody. We add that, to prevent unnecessary expenditures of judicial resources and the resources of litigants, motions to recuse should be given expeditious consideration.

does not contain an explicit requirement that the "report" be in writing it must be assumed that the Legislature sanctioned the private oral reports at issue in this case. We do not agree.

To ascertain the meaning of the word "report" in G. L. c. 276 § 85B, we examine the entire statutory scheme governing investigatory reports in matters concerning children, mindful that "statutes in the same field are to be construed together, if possible, so as to form an harmonious whole." *Mercy Hosp.* v. *Rate Setting Comm'n,* 381 Mass. 34, 40 (1980). See *Negron* v. *Gordon,* 373 Mass. 199, 201-202 (1977). Had the probate judge assigned the investigation to a guardian ad litem rather than to a probation officer, a written report available to the parties for inspection would have been required. G. L. c. 215, § 56A. A similar result would obtain had the probation officer performed the investigation pursuant to the authority of G. L. c. 209, § 32, instead of under G. L. c. 276, § 85B. Other statutory provisions governing the use of investigators in proceedings relating to the welfare of children likewise require a written report open to the scrutiny of the parents. See G. L. c. 119, § 24 (report of expert in care and protection proceeding); G. L. c. 210, § 5A (investigative report in adoption proceeding). We can think of no reason for reading G. L. c. 276, § 85B, to permit a lower level of procedural protection.

The husband argues that we should read § 85B as permitting private, oral reports in order to facilitate prompt reporting to the court and prompt action by the court in emergency situations affecting a child's welfare. Where the Legislature has specifically treated the procedures to be followed when a probation officer becomes aware of a situation inimical to the well-being of a child, however, it has not dispensed with the requirement of a written report. Thus, where a probation officer obtains information that a child's welfare is in jeopardy, the officer "shall immediately report such condition to the [Department of Social Services] by oral communication and by making a written report within forty-eight hours after such oral communication." G. L. c. 119, § 51A, as amended through St. 1983,

c. 222.[8] Even if we assume the existence of an emergency situation, a circumstance not present in this case, that would warrant a probation officer's decision to communicate privately with the judge presiding over a custody dispute instead of following the procedures set forth in § 51A, such a situation would not justify oral comments beyond those necessary to the resolution of the emergency presented.

By holding that the report of a probation officer appointed under § 85B to investigate matters material to a custody dispute must be submitted in writing, we align § 85B with the remainder of the statutory scheme relating to the use of court-appointed investigators in proceedings potentially involving the separation of parents from their children, and also render that section consistent with decisions of this court and other jurisdictions that fundamental fairness, as well as due process concerns, requires that a parent be given the opportunity effectively to rebut adverse allegations concerning his or her child-rearing capabilities. See *Gilmore* v. *Gilmore,* 369 Mass. 598, 605 (1976); *Fewel* ·v. *Fewel,* 23 Cal. 2d 431, 436 (1943); *Wunsch* v. *Wunsch,* 248 Wis. 29 (1945); *Mazur* v. *Lazarus,* 196 A.2d 477, 479 (D.C. 1964). See also Foster & Freed, Child Custody (Part II), 39 N.Y.U.L. Rev. 615, 620 (1964); Comment, Use of Extra-Record Information in Custody Cases, 24 U. Chi. L. Rev. 349, 356 (1957). Without a record to disclose the exact nature of the information communicated by the officer to the judge, the opportunity to cross-examine the officer at trial is an ineffective vehicle for eliciting, and attempting to rebut, allegations that may influence the judge's decision. See Comment, Use of Extra-Record Information in Custody Cases, *supra.*[9]

---

[8] On notification, the Department of Social Services, if there is reasonable cause to believe the child is in immediate danger, may take the child into protective custody provided the department prepares a written report stating the reasons for its action. G. L. c. 119, § 51B (3). On the following court day, the department must petition under G. L. c. 119, § 24, for an emergency order transferring custody to the department.

[9] Our decisions permitting judges to rely on the reports of court-appointed investigators despite their hearsay nature are linked to the opportunity of af-

The judge's findings in awarding permanent custody to the husband indicate that the judge gave prominent consideration to the conditions of the apartment at which the probation officer visited the plaintiff and the children, as well as the environment in which the children would be situated at the husband's residence. We are in no position to discern whether the judge's findings were based exclusively on the evidence presented at trial or whether the probation officer's unexamined impressions and assertions concerning the two homes affected the findings. Further, we cannot tell whether the content of the judge's private conversations with the officer affected the judge's analysis of the facts and his determination as to custody. It is beyond question that "[a] judge may not rely on his private knowledge of particular facts that are not matters of which he can take judicial notice." *Furtado* v. *Furtado,* 380 Mass. 137, 140 n.1 (1980).

"The right of trial involves the right to confront and cross-examine adverse witnesses. This right was not easily won and must not be lightly lost either from frontal attack or erosion. We have no doubt that in the instant case an able and conscientious probation officer reported to an able and conscientious judge, but if the practice should be approved another decision might be made by a less able and conscientious judge upon the report of a less able and conscientious probation officer. After all there is no difference in principle between basing a judgment upon the report of a court's probation officers and basing one upon the report of a king's soldiers. In either instance the right of trial has been denied." *Tumbleson* v. *Tumbleson,* 117 Ind. App. 455, 456-457 (1947)

We therefore vacate the judgment of permanent custody and remand the case to the Probate Court for a new hearing on the issue of permanent custody.[10] We intimate no opinion concern-

fected parties to refute incorrect information contained in such reports. See *Jones* v. *Jones,* 349 Mass. 259, 264 (1965), relying on *Commonwealth* v. *McGruder,* 348 Mass. 712, 716 (1965). See also Foster & Freed, Child Custody (Part II), *supra.*

[10] At the hearing the plaintiff may file a new motion to recuse. We need not decide at this juncture whether a failure to grant the motion in the circum-

ing the disposition of the permanent custody issue at the new hearing, an outcome which of course continues to be governed by the best interests of the children.

*So ordered.*

stances of this case would constitute an abuse of discretion, but we urge the judge to take into account that "[w]here the judge is the trier of fact, he must be most scrupulous both to avoid losing his impartiality and to maintain his unfamiliarity with disputed matters which may come before him and with extraneous matters which should not be known by him." *Furtado* v. *Furtado,* 380 Mass. 137, 151-152 (1980). Cf. *Blizard* v. *Frechette,* 601 F.2d 1217, 1220 (1st Cir. 1979), discussing Federal disqualification statute, 28 U.S.C. § 455(a) (1976), which "allows a judge to disqualify himself if a reasonable [person] would have factual grounds to doubt the impartiality of the court . . . even though the judge himself may subjectively be confident of his ability to be evenhanded. . . . [A] judge's conduct during prior judicial involvement in a case (as opposed to extrajudicial knowledge of the parties or evidence) can conceivably provide a factual basis for doubting impartiality."