## CUSTODY AND ADOPTION OF NED.

Nos. 89-P-1162 & 89-P-1163.

Bristol. February 15, 1990. - May 2, 1990.

Present: ARMSTRONG, KASS, & JACOBS, JJ.

*Minor*, Care and protection, Custody. *Adoption*, Care and protection. *Parent and Child*, Adoption, Care and protection of minor, Custody of minor. *Practice, Civil*, Adoption. *Chief Administrative Justice*.

A care and protection petition filed in a Juvenile Court pursuant to G. L. c. 119, § 24, and a petition in the Probate Court to dispense with parental consent to adoption were properly heard simultaneously by a Juvenile Court judge assigned by the Chief Administrative Justice of the Trial Court, acting under G. L. c. 210, § 3 (*b*), and G. L. c. 211B, § 9, "to sit simultaneously as Justice of the Probate and Family Court and the Juvenile Court to process and dispose of both matters." [559-560]

PETITION filed in the Bristol County Division of the Juvenile Court Department on October 24, 1985.

PETITION filed in the Bristol Division of the Probate and Family Court Department on February 23, 1987.

The cases were consolidated for trial in the Juvenile Court Department and were heard by *Kenneth P. Nasif*, J.

*Paul L. Carlucci* for the father.

*Donna L. Palermino*, Assistant Attorney General, for Department of Social Services.

JACOBS, J. Ned was three and one-half years old when the Department of Social Services (department), on October 24, 1985, filed a care and protection petition on his behalf in the Bristol County Juvenile Court pursuant to G. L. c. 119, § 24. On the same day, the court awarded temporary custody of Ned to the department. While the care and protection case was pending, the department, on February 23, 1987, filed a petition to dispense with parental consent to Ned's adoption in the Probate and Family Court in Bristol

County pursuant to G. L. c. 210, § 3. Thereafter, the Chief Administrative Justice of the Trial Court, acting under G. L. c. 210, § 3(*b*), and G. L. c. 211B, § 9,[1] assigned a judge of the Bristol County Juvenile Court "to sit simultaneously as Justice of the Probate and Family Court and the Juvenile Court to process and dispose of both matters."[2]

After a fragmented hearing conducted over a span of eight months, the assigned judge, on September 1, 1988, filed a "Consolidated Judgment and Probate Decree" that, among other things, adjudicated Ned to be in need of care and protection and dispensed with the need of his parents' consent to his adoption. Only Ned's father has appealed from that judgment and decree.[3] The principal issue[4] pressed by him con-

---

[1]These statutes provide in relevant part as follows:

General Laws c. 210, § 3(*b*), as amended through St. 1985, c. 244:

"A petition brought pursuant to this paragraph may be filed and a decree entered notwithstanding the pendency of a petition brought under chapter one hundred and nineteen or chapter two hundred and one regarding the same child. The chief administrative justice of the trial court may, pursuant to the provisions of section nine of chapter two hundred and eleven B, assign a justice from any department of the trial court to sit as a justice in any other department or departments of the trial court and hear simultaneously a petition filed under this paragraph and any other pending case or cases involving custody or adoption of the same child. A temporary or permanent custody decree shall not be a requirement to the filing of such petition."

General Laws c. 211B, § 9, inserted by St. 1978, c. 478, § 110:

"The chief administrative justice may assign a justice appointed to any department of the trial court to sit in any other department of the court, for such period or periods of time as he deems will best promote the speedy dispatch of judicial business . . . ."

[2]The assignment document was not in the record before us. The quoted language is from the decision filed by the Juvenile Court judge.

[3]Appointed counsel for the parents disassociated themselves from "purportedly frivolous points" in the manner suggested in *Commonwealth* v. *Moffett*, 383 Mass. 201, 208-209 (1981). Apparently, Ned's mother then abandoned her appeal. The substantive claims in the draft report filed pursuant to rule 3 of the Interim Supplemental Rules of Appellate Procedure in Care and Protection Cases (1982) have not been pursued before us by counsel for Ned's father. Instead, he has limited himself to a procedural attack which he asserts was developed after his disassociation and to which he brings more ardent advocacy.

[4]Relying on *Adoption of a Minor*, 386 Mass. 741 (1982), the father ar-

cerns the propriety of both petitions being heard simultaneously. He argues generally that simultaneous hearing risks compromising judicial impartiality for the sake of judicial economy. More specifically, he contends that the best interests analysis called for under G. L. c. 210, § 3, could distort an ongoing parental fitness inquiry required under G. L. c. 119, §§ 24-26. He also claims that *Custody of a Minor (No. 1)*, 391 Mass. 572 (1984), should be read as prohibiting simultaneous hearing of petitions filed pursuant to those statutes.

The articulated standard for deciding a care and protection matter deals with parental fitness (see, e.g., *Care & Protection of Stephen*, 401 Mass. 144, 150 [1987]); it differs facially from the applicable test in a proceeding to dispense with parental consent, which focuses on the best interests of the child (G. L. c. 210, § 3[*a*][ii]). That difference, however, neither prevents the application of both standards in the course of a single proceeding, nor gives rise to an undue risk of one test unfairly affecting the other in a consolidated hearing. These standards, in fact, are interrelated. In a somewhat different but largely indistinguishable context, it was stated that they "are not separate and distinct but cognate and connected." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975). "[E]lements of parental 'unfitness' figure strongly in the 'best interests' test, while elements of 'best interests of the child' weigh in any consideration of whether a parent is fit to have custody of his child." *Id.* at 636-637.

Rarely are judicial responsibilities more weighty than in child custody and adoption disputes. Such matters call upon

gues that the department could not have attained standing to proceed with the adoption until Ned had been adjudicated in need of care and protection. That argument ignores the portion of G. L. c. 210, § 3, inserted subsequent to that case by St. 1983, c. 437. See note 1, *supra*, for the text of that provision. "The plain language of the 1983 amendment and the context in which it was adopted require the conclusion . . . that the pendency of a care and protection proceeding *at any stage* should not preclude the department from proceeding with a petition to dispense with consent to adoption" (emphasis added). *Adoption of Emily*, 25 Mass. App. Ct. 579, 581 (1988).

trial judges to possess "Solomonic wisdom," *id.* at 647 (Hennessey, J., dissenting), and require them to exercise "the utmost care." *Custody of Two Minors*, 396 Mass. 610, 619 (1986). Surely, they can be entrusted also with the much less heavy burden of properly applying cognate standards to consolidated cases.

*Custody of a Minor (No. 1), supra,* need not be read as mandating separate hearings. In that case, the Supreme Judicial Court directed a Juvenile Court judge to conduct consecutive hearings of a review petition under G. L. c. 119, § 26, and a petition to dispense with consent under G. L. c. 210, § 3. The court did not prohibit or speak to the subject of simultaneous hearings. Such prohibition would be contrary to the express wording and clear meaning of G. L. c. 210, § 3(*b*) (note 1, *supra*), which permits an assigned judge to "hear simultaneously a petition [to dispense with consent to adoption], and any other pending case . . . involving custody . . . of the same child." It would also defeat the recognized legislative objective of avoiding unnecessary delays in the determination of custody and adoption disputes. See *Custody of a Minor (No. 1)*, 391 Mass. at 577; *Adoption of Emily*, 25 Mass. App. Ct. 579, 581 (1988). The " 'orderly progression' of the statutory scheme" (*Custody of a Minor (No. 1), supra* at 580), need not be compromised in the service of that objective. Simultaneous hearings do not necessitate simultaneous decisions. The receipt, in one proceeding, of evidence which may be applicable to both cases, does not prevent a trial judge from adhering to the logical order by resolving the care and protection issues before deciding the adoption matter.

*Judgment affirmed.*