CARE AND PROTECTION OF MARTHA & others
(and three companion cases).[1]

Bristol. January 8, 1990. - May 10, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Parent and Child*, Care and protection of minor. *Adoption*, Dispensing
with parent's consent. *Minor*, Care and protection, Adoption. *Evidence*,
Child custody proceeding, Sexual conduct, Cross-examination. *Witness*,
Child. *Practice, Civil*, Findings by judge, Consolidation of actions, Dis-
qualification of judge. *Judge. Due Process of Law*, Adoption, Care and
protection of minor.

At a consolidated proceeding to determine the need for care and protection
of three children and to dispense with consent to adoption, the judge
improperly admitted certain hearsay evidence of sexual abuse; however,
the admission of the evidence was not prejudical where the judge did
not rely on that evidence in making findings and where it was merely
cumulative of other evidence of sexual abuse before the judge. [324-
325]
At a consolidated proceeding to determine the need for care and protection
of three children and to dispense with consent to adoption, the over-
whelming nature of the evidence of sexual abuse, including photographs
and the criminal convictions of the parents, rendered any error in the
judge's restriction of cross-examination of the children on that subject
nonprejudicial. [325-326]
There was no demonstration that the judge at a consolidated proceeding to
determine the need for care and protection of three children and to
dispense with consent to adoption improperly relied on any ex parte
communication in making his findings. [326-327]
The findings and conclusions of the judge at a consolidated proceeding to
determine the need for care and protection of three children and to
dispense with consent to adoption were amply supported by the record.
[327-328]

---

[1]One petition for care and protection was filed by the Department of
Social Services pursuant to G. L. c. 119, § 24, on behalf of the three
minors; three petitions under G. L. c. 210, § 3, to dispense with parental
consent to adoption of the children were filed by the department.

No demonstration was made that the circumstances of a consolidated pro-
ceeding to determine the need for care and protection of three children
and to dispense with consent to adoption were so unusual as to compel
the conclusion that consolidation was improper. [328-329]

There was no showing of bias of a judge requiring his disqualification from
a care and protection and adoption proceeding. [329-330]

Where there was no demonstration by the mother of three children that
the delay between the filing of a care and protection complaint and trial
of the cases was "unreasonably prolonged" there was no merit to her
contention that the delay deprived her of due process. [330-331]

PETITION filed in the Bristol County Division of the Juve-
nile Court Department on January 21, 1985.

PETITIONS filed in the Bristol Division of the Probate and
Family Court Department on December 1, 1986.

The cases were consolidated for trial in the Probate and
Family Court Department and were heard by *Ronald D.
Harper*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*John P. Letourneau* for the mother.

*Lisa A. Levy*, Assistant Attorney General, for Department
of Social Services.

ABRAMS, J. The mother of three minor children appeals
from the adjudication that her children were in need of care
and protection pursuant to G. L. c. 119, § 24 (1988 ed.), and
from the allowance of petitions to dispense with consent to
the adoption of those children under G. L. c. 210, § 3 (1988
ed.). She claims error in (1) the judge's evidentiary rulings;
(2) the judge's findings; (3) the consolidation of the care and
protection proceeding with the adoption petitions and the
judge's failure to disqualify himself; and (4) delay in hearing
the consolidated cases. We transferred the case to this court
on our own motion. We conclude that there was no error and
affirm the orders.

We summarize the facts and proceedings from the findings
and orders of the trial judge and the documentary evidence
in the record. We note with appreciation that the judge in a

document titled "Findings of Fact, Conclusions of Law, and Order" set forth the procedural history of the case, made extensive findings of fact, and stated the factual basis for his conclusions of law.

Prior to their marriage, both parents had lived their entire lives with family members. The mother left school at age seventeen, prior to completing the eighth grade. She has never worked. When they met in April, 1975, the mother was thirty-three years old and the father was forty-seven years old. They married within two months of their meeting and subsequently lived in the home of the mother's parents, where two of three daughters were born: Martha in 1976, and Donna in 1978.[2] The parents eventually moved to their own home in New Bedford. Following the birth of the third daughter, Tammy, in June, 1983, the father's sexual demands on the mother increased to the point where he demanded sex "morning, afternoon, and evening." Although the mother rarely, if ever, refused his sexual demands, she was an unwilling participant and wanted "a break." In order to ease the sexual demands on her, she permitted the father to have sexual relations with Martha and Donna. At that time, Martha was seven years old and Donna was five. These sexual acts occurred twice a week and continued for approximately one and one-half years, until January, 1985, when the abuse was discovered.

The father forced his two older daughters to engage in intercourse and to perform oral sex on him. The mother also engaged in sexual acts with the two daughters, requiring them to perform oral sex on her and performing the same on them. The parents also required the daughters to perform sexual acts on each other.

The mother took pictures of the father engaging in sexual activity with their daughters. Likewise, the father took pictures of the mother engaging in sexual activities with their daughters. The father also photographed the daughters hav-

---

[2]This opinion uses fictitious names for the children.

ing sex with each other. The explicit photographs were kept in a photograph album, which was accessible to the mother.

The mother never told her daughters that they did not have to engage in sexual activities with her or their father. Aside from occasionally telling the father to "stop doing it" to Martha, the mother made no serious effort to prevent the sexual abuse. The children were told that they would receive spankings if they did not comply. The father never actually physically abused the mother nor did he ever threaten her with abuse. She testified at the consolidated trial that she allowed the sexual abuse repeatedly to happen "by force of aggravation." She testified that she herself participated because she "didn't want to break up the family."

The father brought Martha to a hospital on January 11, 1985, because she was suffering from a high fever and respiratory problems. The examining physician immediately observed bruises on her breasts. He notified a hospital social worker to file a report of suspected child abuse. See G. L. c. 119, § 51A (1988 ed.). The father denied knowledge of any abuse; however, when he left the examining room, Martha admitted to the social worker that someone had inflicted the bruises by use of hands. The Department of Social Services (department) was called. At the hospital's request, the parents brought Donna and Tammy to the hospital that same day for an examination. Donna had a vaginal inflammation and Martha tested positive for both oral and vaginal gonorrhea. The father subsequently was tested for gonorrhea; that test proved negative. The father denied any sexual activity with his children. On January 14, 1985, the children were released to the parents; however, the department opened a protective case on the family pursuant to G. L. c. 119, §§ 51A and 51B. At that time, the department believed that the mother was not a perpetrator and could protect her children from further abuse.[3]

---

[3]The department reasoned that: "[The father] agreed to stay within the physicial boundaries set down by the [d]epartment . . . , i.e.: [h]ave no physical contact with his daughters and not be in the same room with them, alone, and both parents agreed to work cooperatively with the

On January 18, the department received an anonymously mailed photograph showing the mother and Martha, naked, lying together suggestively on a bed. Shortly thereafter, a next door neighbor found some explicit photographs blowing around on her front yard and saw a pile of cut-up pictures blowing from a garbage can in the street. She pieced them together and called the New Bedford police. The police took the pictures and notified the department, as well as the district attorney's office.

On January 21, 1985, the department filed an affidavit on behalf of the three minor children pursuant to G. L. c. 119, § 24, with the Bristol County Juvenile Court requesting that temporary legal and physical custody of the children be awarded to the department pending an investigation into the matter. After an emergency hearing, the Juvenile Court judge awarded custody to the department. Following a "seventy-two hour" hearing held on January 23, 1985, the judge continued temporary custody pending further investigation by the Massachusetts Society for the Prevention of Cruelty to Children (MSPCC). See G. L. c. 119, § 24. On March 20, 1985, the judge reviewed the investigatory report submitted by the MSPCC and a service plan drawn up between the department and the children's parents. The judge ordered supervised visits between the children and the parents.

On June 11, 1985, the Bristol County grand jury returned indictments charging both parents with two counts of indecent assault and battery on Martha and Donna, children under the age of fourteen. See G. L. c. 265, § 13B. The father also was charged with unlawful sexual intercourse or unnatural sexual intercourse with, and abuse of, Martha and Donna. See G. L. c. 265, § 23. On December 10, 1985, both

---

[d]epartment; [i]t was felt that mother . . . was not a perpetrator and could protect her children from further abuse; [and the] maternal grandmother was visiting the family and could provide further protection from their father."

parents entered guilty pleas to all charges.[4] The Juvenile
Court judge held an emergency hearing on December 15,
1985, and ordered that no further visits be allowed between
the children and their parents.

In November, 1986, the judge scheduled a full care and
protection hearing pursuant to G. L. c. 119, § 26, to be held
in March, 1987. On December 1, 1986, the department filed
petitions to dispense with parental consent to adoption. See
G. L. c. 210, § 3. The judge allowed the department's re-
quest to continue the care and protection hearing until the
issue of consolidation was resolved. The cases were consoli-
dated on March 18, 1987, and the Juvenile Court judge was
assigned to hear them. On July 14, 1987, the judge ordered
psychological evaluations of the parents, and a psychothera-
pist was appointed in September to conduct the evaluations.
On February 22, 1988, the consolidated hearing commenced.
On September 1, 1988, the judge ordered that the children
be adjudged in need of care and protection, that permanent
legal and physical custody be awarded to the department,
and that the department's petitions to dispense with parental
consent to adoption be allowed.

1. *Evidentiary Rulings.* a. *The children's statements and
diary.* At trial, the judge admitted testimony by Martha and
Donna's psychotherapist[5] recounting statements made by the
girls during therapy sessions regarding the sexual abuse they
had suffered at the hands of their parents. The judge also
admitted statements that two neighbor boys sexually abused
the girls in the presence of both parents, and admitted a di-
ary written by Martha after the abuse had occurred. The
mother objected to the introduction of the statements to

---

[4]On January 3, 1986, the mother was sentenced to a prison term of not
more than five years, nor less than three years. The mother did not appeal
the sentence. See G. L. c. 278, §§ 28A and 28B.

[5]The judge found, without objection, that the psychotherapist was a sex-
ual assault counselor, see G. L. c. 233, § 20J, as well as a licensed social
worker, see G. L. c. 112, § 135. For approximately two years, the therapist
provided Martha and Donna with psychotherapeutic counseling, which ter-
minated shortly before trial.

prove the truth of the matters asserted in the statements. She maintained that, because the statements are hearsay, they should "not be admitted for the substance." The judge agreed, sustained her objections, and admitted the statements solely for nontestimonial, nonhearsay purposes. The judge should have excluded the children's statements and the diary. The fact that the therapist used the statements and the diary in formulating a plan for the children did not require the admission of the statements and the diary. The judge could evaluate the plan based on the evidence before him without hearing the details of the sexual abuse which formed the basis of the convictions. The error, however, does not require reversal. The judge had before him the convictions for sexual abuse and the photographs depicting sexual abuse. Further, in his detailed findings, the judge clearly indicated that he followed his ruling precisely and did not consider the statements and the diary in making his findings. In these circumstances, the admission of the statements and the diary was not prejudicial.

b. *Cross-examination of the children.* After hearing two days of testimony, reviewing certified copies of the convictions of both parents, and viewing explicit photographs depicting the mother engaged in sexual acts with Martha and Donna, the judge informed counsel "that if, in fact, the children were called [to testify, he] would not permit any relitigation of the sexual acts performed by the parents on their children which [had] been proven beyond a reasonable doubt in the Superior Court." The judge explained that the children recently finished counseling and he did not "wish to put them through this experience again when it is not necessary, given the [convictions[6] and photographs]." The judge indi-

---

[6]At the hearing, the judge stated that the parents' convictions were "res judicata" as to the issue of their sexual abuse of Martha and Donna and that he would not relitigate that issue. The mother does not argue that the ruling was an error.

Further, the judge could consider the convictions on the issue of fitness without other evidence or cross-examination. "Where a person's character is itself in issue, as a parent's character generally is in custody or adoption cases, courts have usually held that it may be proved by evidence of spe-

cated that he would allow questions only about matters unrelated to the sexual abuse. The mother objected. She claims that "she was entitled to inquire of the children as to the statements attributed to them and to fully cross-examine them on those issues." The overwhelming nature of the evidence of sexual abuse renders any claim that it was error to exclude cross-examination as to the statements nonprejudicial.

The mother also relies on *Duro* v. *Duro*, 392 Mass. 574, 580 (1984),[7] to support her claim that she should have been allowed to cross-examine the children as to sexual abuse. In *Duro*, we reversed a custody award in a divorce proceeding because "the judge, in the absence of the parties and their counsel, received oral reports from a probation officer assigned to investigate the case." *Id.* at 575. The probation officer was not called to testify at the custody trial. *Id.* at 578.

---

cific acts of misconduct bearing on character. McCormick, Evidence § 187 (2d ed. 1972). The point seems not to have been specifically decided in Massachusetts — perhaps because it is intuitively obvious — but out-of-State decisions seem universally to permit a parent's criminal record to be put in evidence in custody and adoption cases. See *Williams* v. *Department of Pensions & Sec.*, 460 So.2d 1348, 1350 (Ala. Civ. App. 1983); *Matter of Pima County Juvenile Action No. S-949*, 134 Ariz. 442 (1982); *In re Geoffrey G.*, 98 Cal. App. 3d 412, 420-421 (1979); *Smith* v. *Andrews*, 54 Ill. App. 2d 51, 62 (1964); *G.E.Y.* v. *Cabinet For Human Resources*, 701 S.W.2d 713, 716 (Ky. Ct. App. 1985); *In re Emmons*, 165 Mich. App. 701, 705 (1988); *In re Welfare of Scott*, 309 Minn. 458, 461-462 (1976); *In re Interest of B.M.P.*, 704 S.W.2d 237, 250 (Mo. Ct. App. 1986); *Matter of Bradley*, 57 N.C. App. 475, 477 (1982); *Thompson* v. *King*, 393 N.W.2d 733, 739 (N.D. 1986); *Matter of B.A.M.*, 290 N.W.2d 498, 501 (S.D. 1980); *In re Sego*, 82 Wash.2d 736, 740 (1973)." *Adoption of Irwin*, 28 Mass. App. Ct. 41, 43 (1989).

[7]The mother also suggests that she was denied her rights, under art. 12 of the Massachusetts Declaration of Rights, to confront the children. Her argument consists of two passages lifted from *Duro* v. *Duro*, 392 Mass. 574, 580 (1984): "[F]undamental fairness, as well as due process concerns, requires that a parent be given the opportunity effectively to rebut adverse allegations concerning his or her child-rearing capabilities," *id.* at 580, and "[t]he right of trial involves the right to confront and cross-examine adverse witnesses." *Id.* at 581. She makes no further effort to press her argument. This does not rise to the level of an appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

The judge in *Duro* relied on the officer's hearsay statement in making his custody award. We concluded that, in those circumstances, "[w]ithout a record to disclose the exact nature of the information communicated by the officer to the judge, the opportunity to cross-examine the officer at trial is an ineffective vehicle for eliciting, and attempting to rebut, allegations that may influence the judge's decision. . . . [W]e cannot tell whether the content of the judge's private conversations with the officer affected the judge's analysis of the facts and his determination as to custody." *Id.* at 580-581. There was no ex parte communication in this case. The exact nature of the evidence relied on by the judge was fully known to the mother. The judge expressly stated that he was not relying on the statements or the diary. The judge's findings support his statement that he would not consider the children's statements and the diary. In these circumstances, the error in the admission of the statements and the diary was nonprejudicial and the failure to permit cross-examination as to the details of the sexual abuse does not require reversal.

2. *Findings.* In order to remove children permanently from a natural parent and to dispense with parental consent to adoption, the judge must find, by clear and convincing evidence, that the parent currently is unfit to further the welfare and the best interests of the children. *Care and Protection of Stephen*, 401 Mass. 144, 150 (1987), and cases cited. *Custody of Two Minors*, 396 Mass. 610, 619 (1986). *Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984). The judge's findings must be left undisturbed absent a showing that they clearly are erroneous. *Care and Protection of Valerie*, 403 Mass. 317, 318-319 (1988). *Care and Protection of Stephen, supra* at 151. "Moreover, the judge's findings in a custody proceeding must be specific and detailed so as to 'demonstrat[e] that close attention has been given the evidence and that the necessity of removing the child[ren] from [their] parents has been persuasively shown.'" *Care and Protection of Stephen, supra* at 151, quoting *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979). The judge found

that there was "clear and convincing evidence that [the mother] is presently unfit to provide care and protection for [the three children], based upon her repeated serious abuse, neglect, and misconduct." Contrary to the mother's claim that the judge merely repeated the evidence, the judge's findings and conclusions were clear, articulate, amply supported by the record, and fully set forth what testimony the judge found to be credible.[8]

The mother also claims that the judge did not give any consideration to the testimony of her experts and psychiatric counselors, particularly regarding her progress in therapy and her motivation to improve herself. "It is within the judge's discretion to evaluate the credibility of witnesses and to make his findings of fact accordingly. . . . He was not obliged to believe the mother's testimony or that of any other witness." (Citation omitted.) *Care and Protection of Three Minors*, 392 Mass. 704, 711 (1984). The record reveals that the judge made extensive findings about the mother's progress in therapy and her commitment to improving herself; however, "good intentions are not alone sufficient indicia of ability adequately to care for children." *Custody of Two Minors*, 396 Mass. 610, 620 (1986). The expert witnesses were virtually unanimous in testifying that the children would be in danger of further sexual abuse if returned to the mother.

3. *Consolidation and Disqualification.* The mother contends that it was improper to consolidate the care and protection case with the petitions to dispense with consent to adoption. Alternately, she argues that, even if consolidation was proper, the judge who heard the consolidated cases should have disqualified himself because he was assigned to the department's initial petition under G. L. c. 119, § 24, to obtain emergency custody. In her brief, however, the mother concedes that consolidation is expressly authorized by G. L. c. 210, § 3 (*b*), which provides, in relevant part, that "[t]he chief administrative justice of the trial court may . . . assign

---

[8]Indeed, the judge set forth the transcript page for the testimony which he found credible or the exhibit on which he was relying for his findings.

a justice . . . [to] hear simultaneously a petition filed under this paragraph and any other pending case or cases involving custody or adoption of the same child."[9] See generally *Custody of a Minor (No. 1)*, 391 Mass. 572, 577 (1984) (discussing consolidation under c. 210, § 3 (*b*), as mechanism for reducing "unnecessary delays in the litigation of custody and adoption disputes"); *Custody & Adoption of Ned*, 28 Mass. App. Ct. 557 (1990). The mother presents no argument that this provision is invalid. We agree that, in some circumstances, consolidation might be unfair and hence improper. The circumstances of this case, however, are not so unusual as to compel the conclusion that consolidation was improper.

The mother also argues, however, that because the judge already had been exposed to the case by presiding over earlier matters concerning the care and protection of the children, his neutrality was compromised. We disagree.[10] "Bias requiring disqualification must ordinarily arise from an extrajudicial source." *Commonwealth* v. *Gogan*, 389 Mass. 255, 259 (1983). "The alleged bias and prejudice to be disqualifying must rise from an extrajudicial source and not from something *learned from participation in the case*" (emphasis added). *Kennedy* v. *Justice of the Dist. Court of Dukes County*, 356 Mass. 367, 379 (1969). Accord *United States* v. *Grinnell Corp.*, 384 U.S. 563, 583 (1966). See *Withrow* v. *Larkin*, 421 U.S. 35, 55 (1975) ("mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of [a disciplinary board] at a later adversary hearing"). See also *Commonwealth* v. *Valliere*, 366 Mass. 479, 483 (1974)

---

[9]This provision, not challenged by the mother, makes irrelevant the out-of-State case she cites on this issue.

[10]Questions of disqualification of a judge are ordinarily left to the judge's discretion. See *Commonwealth* v. *Gogan*, 389 Mass. 255, 259 (1983). Under S.J.C. Rule 3:09, Canon 3 (C) (1) (a), 382 Mass. 809, 811 (1980), a judge should disqualify himself from a case in which "his impartiality might reasonably be questioned," including cases in which he has a personal bias or prejudice or "personal knowledge of disputed evidentiary facts concerning the proceeding." None of these considerations is involved in this case.

(judge who read transcript of related proceeding need not be disqualified); *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. 571, 587 (1977) (judge in criminal action need not recuse himself because he presided over previous criminal trial involving same defendant).

4. *Delay.* The mother argues that the delay between the filing of the care and protection case in January, 1985, and the trial on the consolidated cases in February, 1988, violated her right to due process. Specifically, she contends that, had the care and protection case been concluded before trial on the petition to dispense with consent to adoption, she "would have had the benefit of reviewing the testimony of the care and protection case" in preparing for the later petition to dispense with consent. She also contends that, without the delay, she could have avoided the consolidation of the cases, which she claims was prejudicial.[11] See section 3, *supra.*

"The Due Process Clause requires provision of a hearing 'at a meaningful time.'" *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 547 (1985). Cf. *Commonwealth* v. *Duhamel*, 391 Mass. 841, 846-847 (1984) (inordinate delay in the appellate process may constitute due process violation); *Williams, petitioner*, 378 Mass. 623, 627 (1979) (same). Thus, an extraordinary and prejudicial delay in custody proceedings, not attributable to the parents, in some circumstances could rise to the level of a violation of due process. That issue is not before us, however, because nothing in the record suggests that the delay was in any way extraordinary.

Indeed, the record reflects that the parents' inability or unwillingness to participate in the service plans drawn up by

---

[11]Citing G. L. c. 119, § 25, the mother also claims that the delay was a "statutory violation." She makes her argument "in a cursory and conclusory fashion." The mother cites "no legal authority to support [her] claim. This is 'an insufficient appellate argument.'" *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 236 (1984), quoting *Tobin* v. *Commissioner of Banks*, 377 Mass. 909 (1979). Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

the department pursuant to 110 Code Mass. Regs. § 6.00 (1987) partly contributed to the delay. Beginning in March, 1985, the department drew up a series of service plans, which the parents refused to sign. The first of these plans was to cover the period from March through September, 1985; a further plan was drawn up for the period from October, 1985, to April, 1986. During this time, the judge monitored the progress of the case.

The record before us shows that the department requested two substantial continuances in the case. Shortly before a scheduled hearing date in October, 1986, the department moved to continue the case on the ground that it intended to move pursuant to G. L. c. 210 to consolidate the case with the petition to dispense with consent. The judge allowed the continuance. The department moved again for a continuance in March, 1987, on the ground that its request for consolidation was still pending with the Chief Administrative Justice of the Trial Court. See G. L. c. 210, § 3 (*b*). The judge granted the department's motion. In her brief, the mother merely "recites the course of proceedings and concludes that the [delay] violated due process. . . . This reveals nothing about the delay except that it stemmed in part from the thoroughness of the procedures." *Loudermill, supra* at 547. On this record, neither continuance appears unreasonable or in violation of the mother's right to due process. Without some further showing by the mother that the delay by the department was "unreasonably prolonged," *id.*, the mother cannot prevail on her contention that the delay violated due process.[12]

---

[12]Unlike the delays we criticized in *Care and Protection of Three Minors*, 392 Mass. 704, 705 n.3 (1984), the delay in the care and protection case here was caused in part by the department's effort to consolidate the care and protection case with the petition to dispense with consent and in part by the parents' refusal to sign a service plan. Because the purpose of consolidation is to reduce the time during which the children's future is uncertain, the delay in order to consolidate the cases was proper. See *Custody of a Minor (No. 1)*, 391 Mass. 572, 577 (1984). To the extent that the mother's objection to the delay is simply a repetition of her argument that consolidation was improper, we reject it. See section 3, *supra*.

The judge's order committing the children to the care and protection of the department, and the orders allowing the petitions to dispense with the need for consent to adoption are affirmed.

*So ordered.*