NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-898

ADOPTION OF CYRIL.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Department of Children and Families (department) filed a care and protection petition in January 2017 and was granted temporary custody of Cyril.[2]  On November 9, 2020, a Juvenile Court judge found the mother unfit, terminated her parental rights, and approved the adoption plan of the department.  The mother appeals arguing that her due process rights were violated and that the judge erred in finding the mother currently unfit to parent Cyril.  Concluding that the trial judge's delay in issuing her decision did not violate the mother's due process

---

[1] A pseudonym.

[2] The original care and protection petition also involved the mother's other two children, Sara and Ben (pseudonyms).  Sara turned eighteen before trial, and the petition as it relates to her is not relevant to this appeal.  The mother's parental rights as to Ben were not terminated by the trial judge.  Regardless, Ben turned eighteen in September 2022, and is now outside the Juvenile Court's jurisdiction.  Thus, Cyril's case is the only one relevant to this appeal.

rights and that the department presented clear and convincing evidence of the mother's unfitness, we affirm.[3]

Background.  We recount the relevant facts, reserving certain details for later discussion.  Cyril was born in July 2010.  The mother has two older children, Sara and Ben (see note 2, supra), who also lived with Cyril and the mother.  The department has been involved with the family since 2012, when it received reports of abuse relating to Sara.  Since then, the department has received additional reports of abuse and neglect of the children.  The mother and Sara got into several physical fights in 2016 and 2017 and the mother admitted in front of school personnel that she hit Sara with a belt.  On January 11, 2017, the department filed a care and protection petition and removed all three children from the home.  Cyril was placed with his paternal grandparents.

After the children's removal, the department provided the mother with action plans which addressed, among other things, the mother's mental health issues and verbal aggression with school staff.  A trial on the mother's fitness was held in February 2019.  In November 2019, the judge conducted a permanency plan hearing and on January 9, 2020, the department filed a motion to reopen the evidence.  The judge held a hearing

_____

[3] Cyril's father did not appeal from the termination of his parental rights and he is not involved in this appeal.

on February 11, 2020, and the motion to reopen the evidence was allowed.  After the reopened hearing was delayed due to the COVID-19 pandemic, the judge heard additional testimony on July 7 and July 14, 2020.  On November 9, 2020, the judge found the mother unfit and terminated her parental rights as to Cyril.  On May 4, 2021, the judge issued her findings of facts and conclusions of law.

Discussion.  1.  Due process.  The mother first argues that the judge's delay in issuing her decision and written findings violated the mother's due process rights.  "[A]n extraordinary and prejudicial delay in custody proceedings, not attributable to the parents, in some circumstances, could rise to the level of a violation of due process."  Care & Protection of Martha, 407 Mass. 319, 330 (1990).  To establish a due process violation, the mother must show prejudice, i.e., "that the outcome of this case would have been different had the proceedings occurred more expeditiously."  Adoption of Don, 435 Mass. 158, 170 (2001).

The mother argues that she was prejudiced by the delay because it allowed the department to introduce evidence of further bonding between Cyril and the paternal grandparents.  Specifically, the mother argues that the evidence presented at the July 2020 trial date of Cyril's continued bonding with his paternal grandparents and the mother's refusal to work with the

3

department "shaped the outcome of this case."  We are not persuaded.  Although the judge's delay in issuing her decision was regrettable, the mother has not shown that her due process rights were violated because, as discussed infra, even without the evidence presented in July 2020, there was clear and convincing evidence for the judge to conclude that the mother was unfit.

The mother appears to separately argue that the judge abused her discretion by deciding to reopen the evidence.  A judge may "reopen evidence to allow all parties to submit relevant, updated information concerning parental fitness" and to avoid making a determination on stale information.  Adoption of Rhona, 57 Mass. App. Ct. 479, 486-487 (2003).  Here, the mother did not object to the judge doing so.  "Objections, issues, or claims -- however meritorious -- that have not been raised at the trial level are deemed generally to have been waived on appeal."  Palmer v. Murphy, 42 Mass. App. Ct. 334, 338

4

(1997).  Because the mother did not object in any way to the judge reopening the evidence, this issue is waived.[4],[5]

2.  <u>Termination of the mother's parental rights</u>.  The mother next argues that the trial judge failed to consider Cyril "as a child separate from" Sara and Ben when assessing the mother's current fitness to parent him.  She argues that the evidence regarding Cyril was insufficient to support a finding of unfitness, when considered separately from the evidence presented about her other two children.  "When reviewing a decision to terminate parental rights, we must determine whether the trial judge has abused [her] discretion or committed a clear error of law."  <u>Adoption of Elena</u>, 446 Mass. 24, 30 (2006).

---

[4] The mother argues that, at the hearing on the department's motion to reopen, her attorney had left the court room to retrieve the mother, and was not present when the judge asked the department whether it wanted her to "issue the findings that are written."  We cannot say from a review of the transcript that the mother's attorney was not present during this part of the conversation, although we acknowledge the mother's attorney's affidavit to that effect, filed only with this court.  What the transcript does show is that the mother's attorney was present during a discussion of dates for hearing new evidence and that she explained to the judge what type of evidence the mother would be presenting.  Following this hearing, the mother's attorney made no objections to the reopening of evidence.

[5] The mother also argues that by asking the department whether it wanted the judge to "issue the findings that are written" the judge indicated that she had already decided the case.  However, there is no error in the judge rewriting her findings in response to the evidence presented at the July 2020 trial dates, especially where the mother did not object to reopening the evidence.

5

Termination of parental rights must be supported by "clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence."  Adoption of Darlene, 99 Mass. App. Ct. 696, 702 (2021), quoting Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012).  "Parental unfitness . . . means more than ineptitude, handicap, character flaw, conviction of a crime, unusual life style, or inability to do as good a job as the child's foster parent.  Rather, the idea of parental unfitness means grievous shortcomings or handicaps that put the child's welfare much at hazard."  Darlene, supra, quoting Adoption of Leland, 65 Mass. App. Ct. 580, 584 (2006).

The judge considered evidence of physical abuse in the household, emotional abuse directed toward Cyril, and the mother's mental health issues, as well as the best interests of Cyril, including bonding with his paternal grandparents (the preadoptive parents), to determine that the mother was unfit and in terminating her parental rights.  These factors, which we address in turn, support the judge's decision.

a.  Physical and emotional abuse.  "Violence within a family is highly relevant to a judge's determination of parental unfitness and the best interests of the children.  As such, a judge must consider issues of domestic violence and its effect upon the children as well as a parent's fitness."  Adoption of Gillian, 63 Mass. App. Ct. 398, 404 n.6 (2005).  "It is well

established that exposure to domestic violence works a 'distinctively grievous kind of harm' on children, and instances of such familial violence are compelling evidence for a finding of parental unfitness." Adoption of Talik, 92 Mass. App. Ct. 367, 374 (2017), quoting Custody of Vaughn, 422 Mass. 590, 595 (1996).

Although the mother did not directly subject Cyril to physical violence, even "the spectator of such abuse" suffers grievous harm. Custody of Vaughn, 422 Mass. at 595. Also, a judge does not "need to wait for inevitable disaster to happen" before intervening. Adoption of Katharine, 42 Mass. App. Ct. 25, 32 (1997). See Custody of a Minor (No. 2), 378 Mass. 712, 714 (1979) ("the State's interest in protecting children from suffering harm at the hands of their parents may properly be preventive as well as remedial"). General Laws c. 210, § 3 (c), requires a judge, when evaluating a parent's fitness, to consider whether "the child or another member of the immediate family of the child has been abused or neglected as a result of the acts or omissions of one or both parents" and whether there was "severe or repetitive conduct of a physically, emotionally or sexually abusive or neglectful nature toward the child or toward another child in the home."

The mother had a history of physical abuse toward her two other children, including pushing, choking, hitting them to the

point of police involvement, and hitting them with a belt buckle. The mother also had a history of abuse toward Cyril's father.

In addition to being in a household with physical abuse, Cyril was the target of emotional abuse from the mother. She verbally "trashed" Cyril's father, told Cyril repeatedly that his father had raped Sara, and referred to the father as a pedophile. The mother also told Cyril that he was stupid like his father. These comments led Cyril to make comments during therapy sessions about his father raping his sister and concerns that he may become like his father.

Taking this evidence into account, the judge did not make a clear error in finding that the physical abuse in the household, and emotional abuse directed toward Cyril, contributed to the mother's unfitness.

b. Mental health. "Mental disorder is relevant only to the extent that it affects the parents' capacity to assume parental responsibility, and ability to deal with a child's special needs." Adoption of Luc, 484 Mass. 139, 146 (2020), quoting Adoption of Frederick, 405 Mass. 1, 9 (1989). The department is to offer services to help address concerns about mental health, but failure by the parent to recognize the need for or to engage in treatment is relevant to a determination of unfitness. See Adoption of Luc, supra at 147.

Here, the department requested that the mother complete a psychological evaluation to determine how her diagnosed mental health issues, and her own history of trauma, impacted her parental fitness.  The mother insisted she did not need therapy or a psychological evaluation.  A social worker attempted to refer the mother for a psychological evaluation, but the mother refused, telling the worker she would seek an evaluation on her own, but she then failed to do so.  The mother also failed to sign a release for the department to refer the mother for an evaluation at the department's expense.  The mother's refusal to accept assistance from the department was appropriately considered by the judge.  See Adoption of Uday, 91 Mass. App. Ct. 51, 54 (2017); Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997) (department's "duty . . . was contingent upon the mother's fulfillment of her own parental responsibilities").

Despite not having access to a psychological evaluation, the judge determined that the mother's untreated mental health issues supported a finding of unfitness.  In making this determination, the judge considered that the mother had been diagnosed with anxiety, depression, and posttraumatic stress disorder, and that her behavior suggested that she may have

9

other mental health concerns.[6]  The evidence presented at trial showed a series of "unruly" behaviors from the mother, including instances where she yelled at a social worker and exhibited behavior toward staff at a residential program that was "so inappropriate that the program refused to allow her to visit [Ben] there"; she had "become very irate, vulgar, verbally aggressive, and combative with [d]epartment staff on multiple occasions."

Based on the evidence, the judge did not err in finding that the mother's mental health issues contributed to her unfitness.

c.  <u>Best interests of the child</u>.  "[T]he welfare of the child is the most important consideration in determining whether the parents are fit to care for their child."  <u>Bezio</u> v. <u>Patenaude</u>, 381 Mass. 563, 574 (1980).  "In making a custody determination, the 'driving factor' is the best interests of the child."  <u>Adoption of Garret</u>, 92 Mass. App. Ct. 664, 676 (2018), quoting <u>Adoption of Irene</u>, 54 Mass. App. Ct. 613, 617 (2002).

---

[6] The judge could also have drawn adverse inferences from the mother's failure to obtain a mental health evaluation, including that the mother believed the resulting diagnoses would not assist her effort to regain custody and that she was not willing to take action to address whatever those diagnoses turned out to be.  Cf. <u>Adoption of Helga</u>, 97 Mass. App. Ct. 521, 526 (2020) (permissible to draw adverse inference, based on mother's absence from two days of trial, that "she was not making efforts to be reunited with her children").

10

At the trial, evidence was presented that after being removed from the mother's care and placed with the paternal grandparents, Cyril was up to date medically, attended school regularly, was stable emotionally, and presented no behavioral issues. A social worker testified that these were positive changes from when Cyril was living with his mother. Another social worker testified that she noticed his reading ability had improved since he had been living with his grandparents. The judge did not err and properly considered this evidence to support her conclusion that "it would be in [Cyril]'s best interests to end all legal relations between [him and his parents]."[7]

Conclusion. Based on the evidence of physical abuse in the household, emotional abuse toward Cyril, the mother's mental health issues, and the best interests of Cyril, the trial judge did not clearly err in finding that the mother was unfit to

---

[7] We disagree with the mother's contention that the judge committed reversible error by not making sufficient findings on the bond between Cyril and the paternal grandparents, the harm that would result from severing that bond, and what means would be available to alleviate the harm. See Adoption of Katharine, 42 Mass. App. Ct. at 30-31. Such findings are required where bonding with a substitute caretaker is a "decisive factor." Id. at 30. That is not the case here, given the other evidence of unfitness.

parent Cyril, nor did the judge abuse her discretion in terminating the mother's parental rights.[8]

Decree affirmed.

By the Court (Sacks, Shin & D'Angelo, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  June 12, 2023.

---

[8] The mother also argues, for the first time on appeal, that the department failed to make reasonable efforts to provide services.  The mother's arguments on appeal are akin to "[a] claim of inadequate services[, which] must be raised in a timely manner to provide the judge and the department the opportunity to make accommodations while the case is pending."  Adoption of Yalena, 100 Mass. App. Ct. 542, 554 (2021).  As such, the issue is waived.  In any event, even if the department had failed to make reasonable efforts, that would "not preclude the court from making any appropriate order conducive to the child's best interest."  Adoption of Ilona, 459 Mass. 53, 61 (2011), quoting G. L. c. 119, § 29C.

[9] The panelists are listed in order of seniority.