PETITION OF CATHOLIC CHARITABLE BUREAU OF THE
ARCHDIOCESE OF BOSTON, INC., TO DISPENSE WITH
CONSENT TO ADOPTION.

Essex. April 4, 1985. — June 11, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Adoption*, Dispensing with parent's consent. *Parent and Child*, Custody of
minor.

In a proceeding by a social service agency seeking to dispense with the need
for a mother's consent to the adoption of her child, there was clear and
convincing evidence that the mother was unfit to care for the child.
[183-186]

In a proceeding to dispense with the need for a mother's consent to the adop-
tion of her child, the judge was warranted in considering the alcoholism
and propensity to violence of the child's father, where the father had
maintained a relationship with the mother for the nine years since he
and the mother had been divorced, and where the judge could properly
have found that the mother was not free of the father's destructive
influence. [186]

In a proceeding to dispense with the need for a mother's consent to the adop-
tion of her child, the judge could properly consider evidence of the
child's condition some one and one-half years before trial, when he
lived with the mother, and contrast it with evidence of the development
of the child since he had been removed from the mother's custody.
[186-187]

In a proceeding to dispense with the need for a mother's consent to the adop-
tion of her child, the judge's reference in his findings to the unconstitu-
tional presumption contained in G. L. c. 210, § 3 (c), did not violate
the mother's rights, where the judge's findings made clear that he did
not rely on this presumption in determining to dispense with the mother's
consent to the adoption. [187-188]

PETITION filed in the Essex Division of the Probate and
Family Court Department on December 14, 1981.

The case was heard by *Edward J. Rockett*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Linda E. Giles* for the mother.

*William J. Lundregan* for Catholic Charitable Bureau of the Archdiocese of Boston, Inc.

ABRAMS, J. The mother of a minor appeals from a judgment of the Probate and Family Court allowing a petition by the Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to dispense with parental consent for the adoption of the mother's minor child (child). The Appeals Court affirmed the judgment. *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 656 (1984). We granted the mother's application for further appellate review. We agree with the Appeals Court that the judgment dispensing with the need for the mother's consent to her child's adoption should be affirmed.

The mother argues that (1) the finding that the natural mother was unfit was not supported by clear and convincing evidence; (2) in ruling that both parents, jointly and not individually, were unfit, the judge violated the Massachusetts Equal Rights Amendment by invoking a rule of "guilt by association"; (3) the finding that it is in the best interest of the child to terminate the rights of the natural parents was not supported by clear and convincing evidence; and (4) the trial judge erred in invoking and applying the unconstitutional presumption of G. L. c. 210, § 3 (*c*), that it is in the best interests of a child to grant a petition to dispense with parental consent when the child has been in the care of the Department of Social Services (department) or a licensed child care agency for more than one year.

The judge found the following facts. The child, the youngest of three children, was born in 1979. The mother's sister adopted the older daughter and the older son lives with the mother. The mother and father were divorced in 1973,[1] but have maintained a volatile relationship since the divorce. The father is a "drinker" and has a criminal record and a history of violence. He has threatened his landlord and a social worker employed by

---

[1] There is a discrepancy in the record as to the date of the divorce. The application for further appellate review states that the parents were divorced in 1974.

the Catholic Family Services. The mother was an alcoholic and attends Alcoholics Anonymous meetings on a nightly basis. She spends most of her time playing cards and socializing at a social club. She receives financial support from the Department of Public Welfare. See *infra* at 184.

In February, 1981, through a referral by the Catholic Family Services of Lynn (CFS) social worker assigned to the family, the child entered a therapeutic infant-toddler program. Although the mother became involved in joint mother-child therapy, she often was preoccupied by other family problems. Her participation in the program was irregular and of short duration. The mother moved six times between February of 1981 and December of 1982. During a visit to the family's apartment in May, 1981, a social worker for the CFS observed broken windows, lack of heat and electricity, and a constant urine odor. At the time of trial, the older brother, then thirteen years of age, lived with his mother in one room of a boarding house.

In the spring of 1981, the mother voluntarily placed both children living with her at the time in foster care with the CFS because of lack of funds and inability to provide adequate housing and shelter. This was the third placement of the younger child in foster care.[2] After a short period of time, the CFS recommended the return of the older brother because of a strong attachment to his mother and unhappiness in foster care.

Teachers at the infant-toddler program referred the child to North Shore Children's Hospital for evaluation. Dr. Peter Orlov, the psychiatrist who observed and examined the child in May, 1981, testified that he was "a depressed, tense, blank-faced child with little affect," and diagnosed him as having a reactive attachment disorder of infancy. In December, 1982, a CFS social worker who visited the child in his foster home said that he "was making considerable progress in that he was cheerful, happy and verbalizing well."

[2] He had been placed in foster care from December 14, 1979, to January 9, 1980, and from November 18, 1980, to December 23, 1980. *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 656, 658 n.3 (1984).

In November, 1981, the acting director of the Lynn office of the Catholic Charitable Bureau of the Archdiocese of Boston, Inc. (CCB), filed a petition for temporary guardianship with custody and a petition for permanent guardianship with custody of the child. The court allowed the petition for temporary guardianship and has renewed it every ninety days since then.

On December 14, 1981, the CCB, pursuant to G. L. c. 210, § 3, filed in the Essex Division of the Probate and Family Court Department a petition to dispense with the need for parental consent to adoption. After a citation was issued, the mother filed an appearance, pro se, but the father did not appear and was defaulted. A judge of the Probate and Family Court appointed counsel for the mother and a guardian ad litem for the child.[3] On November 20, 1982, the child was placed with his proposed "legal risk" preadoptive parents.[4] In December, 1982, and January, 1983, a judge heard the case and in April, 1983, made findings of fact and conclusions of law. He concluded that it was in the child's best interest to dispense with parental consent to the child's adoption. The mother appealed, and the Appeals Court affirmed the judgment. *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 656 (1984). We also affirm.

1. *Unfitness of the mother.* "The critical issue presented in a case seeking to dispense with the need for parental consent to adoption 'is whether the natural parents are currently fit to further the welfare and best interests of the child.'" *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 389 Mass. 793, 799 (1983), quoting *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 589 (1981). Natural parents may not be deprived of the custody of their minor children in the absence of an affirmative showing by the Commonwealth that they are paren-

---

[3] The guardian ad litem filed a report recommending that the petition to dispense with the need for parental consent be allowed.

[4] The "legal risk" used in this term applies to the preadoptive parents, who may not be able to adopt the child.

tally unfit because they "have grievous shortcomings or handicaps that would put the child's welfare in the family milieu much at hazard." *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 391 Mass. 113, 118 (1984), quoting *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 646 (1975). In custody disputes "[n]either the 'parental fitness' test nor the 'best interests of the child' test is properly applied to the exclusion of the other." *Bezio* v. *Patenaude,* 381 Mass. 563, 576-577 (1980).

The mother contends that the petitioner did not meet its burden of proving her unfitness by "clear and convincing evidence." *Santosky* v. *Kramer,* 455 U.S. 745, 768-770 (1982). *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 389 Mass. 793, 803 (1983). We do not agree.[5] The family's six moves between February, 1981, and December, 1982, as well as the deteriorated housing, broken windows in the apartment, and lack of heat and electricity, indicated a lack of stability and an inability to provide adequate living conditions for the child. Although the mother had moved since the social worker had visited the apartment and noticed the broken windows and urine odor, the older son said that he lived with his mother in one room in a boarding house and that one person had to sleep on two chairs put together while the other slept on the one bed. The psychiatrist found that the child suffered from environmental deprivation. From these facts the judge could conclude that the instability and inadequacy of the living conditions had a deleterious effect on the child.

A parent may not be found unfit because he or she is poor. *Care & Protection of Three Minors,* 392 Mass. 704, 713 n.12 (1984). *Custody of a Minor,* 389 Mass. 755, 766 (1983). The evidence, however, indicated that the mother had serious emotional problems. The judge concluded that she "is so over-

_____

[5] We agree with the Appeals Court that the findings of the judge could have been more precise and structured less in the form of summaries of what witnesses said. *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption, supra* at 662.

395 Mass. 180 185

Petition of Catholic Charitable Bureau to Dispense with Consent to Adoption.

whelmed with her own problems that she is unable to provide the parenting necessary for [the child's] growth and development." The mother's participation with the child in the infant-toddler program was irregular, of short duration, and the sessions focused mostly on the mother's concerns about crises in her family, her depression, and her feelings of being overwhelmed. A CFS social worker said that the parents did not request visitation with the child from November, 1981, to March, 1982. He also said that on some visits the mother was anxious, tearful, nervous, and did not show affection toward the child. Dr. Orlov, the psychiatrist, also opined that, based on his 1981 diagnosis, the parents "had so severely neglected and deprived [the child] of parenting essential to his physical and mental health, that only a concerted effort could return [the child] to normal physical and mental health."

Although there is a paucity of evidence on the current condition of the mother, past unfitness may be used to show current unfitness. "[A]n assessment of prognostic evidence derived from an ongoing pattern of parental neglect or misconduct is appropriate in the determination of future fitness and the likelihood of harm to the child." *Custody of a Minor (No. 1)*, 377 Mass. 876, 883 (1979). Accord *Bezio* v. *Patenaude*, 381 Mass. 563, 577 (1980).[6]

Furthermore, the mother's suggestion that a finding of parental fitness is supported by her voluntary placement of the child in the custody of the department and awareness of the child's problems in general is without merit. Although the child might have suffered even more severe problems if the mother had not placed him in foster care, her actions manifest her awareness

---

[6] Contrary to the mother's argument, the fact that the CFS returned the older son to the mother does not negate the finding that the mother is unfit as a parent. The judge could conclude that the child is in need of particular parental skills and stability that the mother was unable to provide. Furthermore, the evidence suggests that the older son had had fewer problems, was more independent, and needed less constant attention than his younger brother. Because of differing needs of children, parents may be fit to bring up one child and not fit to bring up another. *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 589 (1981).

of her own deficiencies as a parent, rather than her ability to care for the child.

2. *Finding of father's unfitness*. The mother argues that the judge erred in basing part of his decision on the unfitness of the father, who was not a party, because in so doing, the judge applied the rule of "guilt by association" in violation of the Fourteenth Amendment to the United States Constitution and art. 106 of the Amendments to the Massachusetts Constitution (the Equal Rights Amendment). A finding as to the father's fitness as a parent was not in itself significant to a determination of the mother's fitness. An evaluation of the father's influence on the mother and the child, however, was directly relevant to such a determination.

Although the mother argues that she had not lived with the father for almost a year before the trial, there was evidence that, voluntarily or not, she continued to see him often. "Moreover, his alcoholism and propensity to violence and threats were part of the circumstances in which the unfortunate mother found herself . . . [and] contributed to the mother's depression and inability to cope with a needy child. Reasonably, the judge could have found that the mother was not free of the father's destructive influence." *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption, supra* at 660. The judge therefore did not find the mother "guilty" because of association with the father. Rather, he took into consideration the influence on the child of the father's violent relationship with the mother.[7]

3. *Best interests of the child*. Dr. Orlov, the psychiatrist, said that in 1981 he found the child to be depressed, tense, and

---

[7] Because the mother provided no precedential or analytic legal support for her claim that the finding violated the United States and Massachusetts Constitutions, the claim set forth in her brief does not comply with the rule that the argument in an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Mass. R. A. P. 16(a)(4), as amended, 367 Mass. 919 (1975). See, e.g., *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 236 (1984); *Commonwealth* v. *Elder*, 389 Mass. 743, 747 n.9 (1983); *Tobin* v. *Commissioner of Banks*, 377 Mass. 909, 909 (1979). We therefore deem that argument waived.

unresponsive to people or toys, with the exception of toys in the shape of food. The child hoarded food. The doctor opined, "It is only with enormous consistency and collaboration between the school and the outside that this child's depression and disabilities can be reversed." At the time of trial, the child was very talkative, showed and accepted affection, and no longer hoarded food.

It was not error for the judge to consider evidence of the child's condition in 1981, while he lived with the mother, and contrast it with the development of the child since he had been removed from the mother's custody. The evidence supported the judge's conclusion that the best interests of the child necessitated his living with a parent or parents who were able to contribute to his continued positive development.

We add, however, that the judge's finding that the severing of the psychological attachment with the proposed adoptive family would be detrimental to the welfare of the child was inappropriate and not supported by the record. At the time of trial, the child had only lived with the proposed adoptive family for six weeks.

4. *General Laws c. 210, § 3 (c).* In his conclusions of law, the judge made reference to the statutory presumption of G. L. c. 210, § 3 (c), that the best interests of a child will be served by granting a petition to dispense with parental consent to adoption if the child has been in the care of a licensed child care agency for more than one year. The mother argues that, because we found the presumption unconstitutional in *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 389 Mass. 793, 802-803 (1983), the judge erred in invoking and applying it.[8] Although the judge did refer to the presumption in his conclusions of law, he also found that the evidence warranted the conclusion that "[n]otwithstanding such presumption, the [mother] has neither the past nor the present ability, capacity, fitness or readiness to assume parental re-

[8] We had not yet held the presumption unconstitutional when the judge made his findings. After our ruling in *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra* at 803, the mother did not move to have the judge reconsider his findings in light of that opinion.

sponsibility of the child." We therefore hold that, although it would have been better if the judge had not mentioned the presumption, the decision is not reversible on that basis because the findings indicate that the judge's decision rested upon other grounds. *Id.*

*Judgment affirmed.*