The mother and father appeal from decrees terminating their parental rights as to two of their children, Kaya and James.[3] Both parents argue that the evidence did not clearly and convincingly establish their parental unfitness. The mother additionally argues that certain of the judge's subsidiary findings of fact are clearly erroneous and that the judge impermissibly put the burden on her to prove that she is fit. We affirm.
The mother's appeal. 1. Parental unfitness. A judge may terminate parental rights only where there is clear and convincing evidence that the parent is currently unfit to provide for the welfare and best interests of her children. See Adoption of Kimberly, 414 Mass. 526, 528-529 (1993). "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). In deciding whether a parent is currently unfit, the judge can "rely upon prior patterns of ongoing, repeated, serious parental neglect, abuse, and misconduct." Adoption of Kimberly, 414 Mass. at 529, quoting from Adoption of Diane, 400 Mass. 196, 204 (1987).
Here, the judge's findings detail the mother's lengthy history of neglecting her children-she has nine total-stemming from a variety of factors, including domestic violence, substance abuse, untreated mental health issues, housing instability, and criminal behavior resulting in incarceration. This pattern of neglect dates to 1993 and resulted in the removal of the mother's seven other children.[4] Although the mother is correct that a finding of current unfitness cannot be based on stale information, the judge properly considered this history for its prognostic value. See Adoption of Carla, 416 Mass. 510, 517 (1993).
Added to this prognostic evidence was evidence demonstrating the mother's current inability to parent Kaya and James. The mother did not receive adequate prenatal care for either Kaya or James, the latter of whom was born prematurely. In September of 2011, while the mother was pregnant with James, she was involved in a serious domestic violence incident with the father, who reported to the police that the mother pulled a knife on him. The mother was arrested, found guilty of assault by means of a dangerous weapon, and given a six-month suspended sentence. Even after this incident, the mother continued to advocate for remaining in contact with the father.
Although the mother was found unfit to parent Kaya after the first trial, she was given another opportunity to regain custody of the children. In August of 2013, DCF increased the frequency of her visits with the children with the aim of reunification. But while the mother's attendance was initially consistent, by April of 2014, she began missing multiple visits. It is uncontested that the mother missed approximately forty percent of the visits scheduled in 2014, causing DCF to reduce them to a monthly basis. The mother missed many visits for unexplained reasons or because she did not call DCF in time to confirm. She also cancelled numerous home visits, failed to attend early intervention sessions for James, and failed to attend James's medical and dental appointments despite DCF's request that she do so. In addition, the mother failed to appear for two days of the second trial, which led the judge to draw a negative inference against her.
The record also supports the judge's determination that the mother did not meaningfully participate in or benefit from services since she was found unfit after the first trial. Just a few months later, in December of 2013, the mother failed a drug test, testing positive for marijuana. She did not receive counselling or therapy on a consistent basis and was terminated from two programs in late 2013 and in 2014 for noncompliance. She failed to complete a domestic violence program and was involved in another domestic violence incident in January of 2014.[5] At the time of trial, she was homeless and had no viable plan for obtaining housing that would be suitable for the children. She also failed to appreciate the impact of her smoking around the children, both of whom suffer from asthma, which had been a recurring issue throughout the proceedings. Although DCF repeatedly advised the mother that her smoking could trigger James's asthma, the foster parents reported that the children would return from visits smelling like smoke. The judge cited this as an example of how the mother continued to place her needs above those of her children.
We reject the mother's claim that the judge failed to give sufficient weight to the evidence in her favor. The judge did take that evidence into account, finding for example that the mother participated in some services, that she was appropriate during visits, and that she was no longer in a relationship with the father. Nonetheless, the judge found that the mother had not "benefitted from the services that she actually utilized, including [gaining] any knowledge or insight about domestic violence or the impact her behavior has on her children" and had not made any "significant progress towards changing a pattern of behavior that endangers the welfare of [the] children." We discern no error in this determination or in the judge's ultimate conclusion that the evidence clearly and convincingly demonstrates that the mother is currently unfit to parent Kaya and James. See Adoption of Lorna, 46 Mass. App. Ct. 134, 143 (1999) ("The judge was not obliged to believe that the parenting skills of the mother ... had improved simply because of [her] recent cooperation with the department, or that [her] good intentions eliminated risk of future abuse").[6]
2. Contested subsidiary findings. The judge's subsidiary findings "must be left undisturbed absent a showing that they are clearly erroneous." Custody of Eleanor, 414 Mass. 795, 799 (1993). "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Ibid., quoting from Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977).
The mother has not shown any reversible error in the judge's subsidiary findings. The evidence supports the judge's findings that the mother did not visit with the children consistently, that her housing situation was unsuitable for the children, that her mental health issues were "largely untreated,"[7] and that she did not complete a domestic violence program.[8] Regarding the finding that the children are bonded to their foster parents, the "judge could permissibly infer that some bonding had occurred" in light of the fact that the children had lived with the foster parents for approximately three years by the time of trial. Adoption of Daniel, 58 Mass. App. Ct. 195, 203 (2003). Because bonding was not a decisive factor in the unfitness inquiry, expert testimony and more detailed findings were not required. See ibid.
The mother also challenges several findings relating to her inability to understand or meet the children's needs. These arguments invite us to reweigh the evidence and substitute our own findings for those of the judge, which we cannot do. See Adoption of Quentin, 424 Mass. 882, 886 (1997). Although there may be minor errors in some of the findings, we view them as inconsequential to the judge's ultimate determination of unfitness. See Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003).
We likewise reject the mother's argument that the judge erred in finding her unfit because the evidence did not establish a nexus between her mental health issues and her parental shortcomings. The judge's determination was not based on the mother's mental health issues alone. Cf. Care & Protection of Bruce, 44 Mass. App. Ct. 758, 763 (1998). Regardless whether mental illness was the precise cause of the mother's parenting deficiencies, the evidence clearly and convincingly established her unfitness.
3. Shifting of burden of proof. Finally, the mother contends that the judge impermissibly shifted the burden to her to prove that she is fit. In support, the mother takes pieces of the judge's decision out of context and asks us to view them in isolation. We decline to do so. The judge properly recited DCF's burden of proving parental unfitness by clear and convincing evidence and ultimately concluded that DCF sustained its burden. There was no error.
The father's appeal. The father does not challenge any of the judge's subsidiary findings but argues that the findings taken together do not clearly and convincingly establish that he is unfit. We disagree. The findings detail the father's extensive criminal record and history of domestic violence, resulting in the issuance of multiple restraining orders against him. He also has significant mental health issues, for which he does not take medication. He did not engage in services, cooperate with DCF, or visit the children,[9] and his whereabouts were unknown for extended periods of time. He lacks suitable housing or a future plan to take care of the children. These findings amply support the judge's determination that the father is currently unfit to parent Kaya and James.[10]
Decrees affirmed.

The Department of Children and Families (DCF) filed separate care and protection petitions regarding each child. In August of 2012, trial started on the petition as to Kaya only; paternity was not established at that time. In August of 2013, the judge found the mother unfit to parent Kaya but did not order the termination of the mother's rights. The petitions were later consolidated, and, in March of 2015, the consolidated cases proceeded to trial before the same judge, after which the mother's and father's parental rights were terminated as to both children.

Five of the children were adopted, and one lived with her father until she reached adulthood. The seventh child-who is the eldest of the three children the mother and father had together-is in a guardianship with her paternal grandmother.

The man involved in this incident was in a relationship with the mother from April of 2011 to at least January of 2013. According to the mother's report to the police, the man grabbed her neck and tried to choke her. Although the mother claims that the judge should not have weighed this evidence against her because she was the victim in the assault, the judge properly viewed the incident-immediately prior to which the mother consumed alcohol to excess, causing her to lose her memory-as indicative of her "inability to make responsible choices."

The mother raises no independent challenge to the termination of her parental rights. In any event the judge did not abuse her discretion in finding that the mother's unfitness was not temporary and that terminating her parental rights would be in the children's best interests. See Adoption of Elena, 446 Mass. 24, 30 (2006) ("When reviewing a decision to terminate parental rights, we must determine whether the trial judge abused [her] discretion or committed a clear error of law").

At oral argument the mother claimed that the judge erred in finding that her counselling sessions with Martha Scott were terminated due to the mother's lack of attendance. This finding appears to be clearly erroneous, as a DCF social worker testified that the sessions were discontinued for reasons not attributable to the mother. Even without this finding, however, there is still adequate support for the judge's conclusion that the mother's mental health issues were largely untreated. See Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003) (discounting minor factual errors "not central to the ultimate conclusion of unfitness").

Although there may be conflicting testimony on this last point, it was for the judge to resolve any factual discrepancies. See Adoption of Peggy, 436 Mass. 690, 702 (2001), cert. denied sub nom. S.J. v. Department of Soc. Servs., 537 U.S. 1020 (2002).

The judge did not credit the father's claim that he tried to schedule visits with James but the DCF social worker failed to contact him.

The father does not separately challenge the termination of his parental rights, but, in any event, we discern no abuse of discretion by the judge in that respect. See Adoption of Elena, 446 Mass. at 30.