The father appeals from a decree issued by a judge of the Juvenile Court terminating his parental rights to his daughter, Khaleesa, and approving a plan for adoption. On appeal, the father asserts that the judge's subsidiary findings do not support the ultimate finding of unfitness. We affirm.
The trial judge's findings of fact are entitled to considerable deference. We "reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). Subsidiary findings of fact must be proved by a fair preponderance of the evidence and taken together, these findings must prove by clear and convincing evidence that the parent is unfit. See Adoption of Helen, 429 Mass. 856, 859 (1999) ; Adoption of Kimberly, 414 Mass. 526, 528-529 (1993). "A finding is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotation omitted). Adoption of Cecily, 83 Mass. App. Ct. 719, 726 (2013).
Khaleesa was removed from the home at the age of two months. After efforts to reunify failed, the Department of Children and Families (department) changed its plan to adoption. The gravamen of the father's appeal is that he had been working hard to make a home for Khaleesa, and that the department improperly took advantage of temporary interruptions in that plan to terminate his parental rights. He claims that the judge's subsidiary findings mischaracterize the facts and do not amount to clear and convincing evidence of unfitness.
For example, the father points out that the judge found that the father had a history of housing instability after Khaleesa's birth. The father had moved several times for a variety of reasons. He was living with his grandfather when he was incarcerated for three months as a result of the mother's allegations of domestic violence, allegations later deemed to be untrue. After his release, the father went on to find employment and other housing.[3]
The father contends that he should not be faulted for being the victim of a false accusation, and should be credited for his subsequent efforts to get back on his feet. This argument misses the mark, however. The judge found the facts as stated above, but did not lay blame for that move on the father. Rather, the judge looked to the father's inconsistent efforts in a number of areas to provide a home for Khaleesa, and in particular focused on the father's inability to end his relationship with the mother.[4] The judge's finding of unfitness rests primarily on the father's inability to separate from the mother and make a safe home for Khaleesa without her.
The mother did not appear at trial, and she has not appealed from the judge's decision terminating her parental rights. The mother has a long history of substance abuse, including abuse of prescription medications and heroin, and severe depression. The department first took custody of Khaleesa when the mother overdosed after bringing Khaleesa, then two months old, to see the father. The mother had been hospitalized multiple times, stated her intention to die by suicide, was in and out of drug treatment, was terminated from drug treatment programs for noncompliance, and was inconsistent in taking her prescribed medications.
The father repeatedly called the department stating that the mother was high, uncontrollable, and a danger to Khaleesa. He reported, for example, that when she was suicidal, the mother said that Khaleesa would be better off without her. She has asked him to buy drugs for her after learning she was pregnant with another child. He sought the department's assistance in having her involuntarily committed.
The father, however, continued to see the mother, even after she caused him to be incarcerated. The department told the father that he had to separate from the mother or risk the loss of parental rights to Khaleesa. He did not terminate the relationship. At the time of trial she was pregnant with another child.[5] The judge deemed the father's inability to extricate himself from the mother to be contrary to the best interests of Khaleesa.
The father maintains that the judge's findings contained an implicit and unfair requirement that he choose between the child and attempting to assist the child's mother and maintain a family unit. The department's directive and the judge's findings and conclusions were not implicit, they were explicit. By prioritizing the mother's welfare over that of the child, the father did not act in the child's best interests. See Adoption of Larry, 434 Mass. 456, 467-468 (2001).
Other factors were also properly considered by the judge. The father objects to the judge's consideration of a conviction of assault and battery arising out of an incident five years earlier when the father assaulted and choked his former wife. The judge was obligated to make "detailed and comprehensive findings of fact [regarding] domestic violence and its effect upon the child as well as upon the father's parenting ability" (quotation omitted). Custody of Vaughn, 422 Mass. 590, 599 (1996). Although there were no other reported incidents of domestic violence since that time, the father had also failed to complete batterer's intervention classes. Once he completed parole for the offense involving his former wife, the father also stopped going to counseling or individual therapy, contrary to his service plans.[6] The judge was permitted to take the conviction and the failure to complete batterer's intervention classes or attend counseling into consideration when weighing the evidence. See Care & Protection of Lillith, 61 Mass. App. Ct. 132, 142 (2004) ("although the evidence of domestic violence in this case may be dated, and in part disputed, it was sufficient to require the express consideration of the issue"). It was for the judge to determine whether the evidence was stale or probative. See ids="511467" index="7" url="https://cite.case.law/mass-app-ct/61/132/#p142">id. Given the past history of aggressive behavior, and the failure to complete treatment, the judge did not abuse her discretion.
Finally, the father did not appear for trial, and the judge drew an adverse inference from his absence.[7] "Where a parent has notice of a proceeding to determine his parental rights and the parent does not attend or provide an explanation for not attending, the absence may suggest that the parent has abandoned his rights in the child or cannot meet the child's best interests." Adoption of Talik, 92 Mass. App. Ct. 367, 371-372 (2017). Although this inference, alone, would not be sufficient to meet the department's burden of proof, itation index="9" url="https://cite.case.law/citations/?q=92%20Mass.%20App.%20Ct.%20367">id., the father's abandonment of his rights supports the judge's overall finding that the father was not a reliable caregiver who could act in the best interests of the child.
The judge's finding of unfitness was supported by the evidence, and the judge committed no abuse of discretion or error of law.
Decree affirmed.

The mother also broke into his apartment several months later. He called his parole officer and the police, and the department encouraged him to obtain a restraining order. He did not seek one.

The judge found that the father had moved several times, occasioned in part by his inability to make enough money as a construction worker to stay in an apartment with his cousin or obtain other suitable housing. The department suggested he apply for public housing. The evidence is unclear, and the judge made no findings, as to whether he was eligible for public housing as a parolee. The department had urged him to apply and appeal if he was denied. He did not apply. The failure to follow through on making an application may be some further evidence of the father's inconsistency in completing tasks necessary to providing a stable home, but we do not, on this record, rely on the failure to obtain publicly supported housing in affirming the decree.

There was some conflicting testimony on this point, but the judge found that the father was the parent of the new baby (who is not involved in these proceedings), and that the father had attempted to reconcile with the mother.

The father had been arrested for assault and battery, disorderly conduct, and resisting arrest, among other charges, and was the subject of three other restraining orders. His service plans required both batterer's intervention classes and individual therapy to "address his past history of assault and battery and learn effective coping skills."

The father had also failed to appear for scheduled visits. In the two months before trial, there were nine missed visits, two of which were unexplained. On many occasions the father missed visits due to conflicts with his job in the construction industry. The father claims, understandably, that he had an obligation to keep the job to provide for Khaleesa. However, the fact that the job itself carried with it a demanding schedule only underscores the risks associated with the father's decision to reconcile with the mother.