The mother appeals from a decree finding her unfit to parent her son, Titus, and terminating her parental rights.[3] She argues that the evidence did not clearly and convincingly establish that she is unfit, that the judge erred by relying on evidence relating to the mother's past care of a different child, that the judge abused her discretion in approving the adoption plan put forward by the Department of Children and Families (department), and that the judge abused her discretion by not ordering postadoption visitation. We affirm.
Background. The mother has a long history of using drugs and alcohol, as well as diagnosed mental illnesses, including posttraumatic stress disorder, anxiety disorder, depression, and bipolar disorder. She also has epilepsy, which causes her to suffer grand mal seizures. The mother told the court investigator that she is "not in her right mind" for approximately seventy-two hours after a seizure.
Titus was born in August of 2012 with opiates and methadone in his system and was in the hospital for several weeks to treat his withdrawal. This led to the department filing its first care and protection petition in September of 2012. The department created a service plan for the mother, but she did not comply with the tasks. For example, though the department referred Titus for early intervention services, the mother never followed through with having him evaluated. The mother also stopped attending therapy and continued to use marijuana and benzodiazepines, testing positive for those substances in July and November of 2014.
In December of 2015, a report under G. L. c. 119, § 51A, was filed after the mother missed three appointments with Titus's neurologist. A social worker investigated the report and learned that the mother had been hospitalized. When the social worker spoke to the mother at the hospital, the mother gave conflicting accounts as to Titus's whereabouts. Based on their interaction, the social worker believed that the mother was on drugs, and was concerned for Titus's safety.
The next day, the social worker went to the mother's home to check on her and Titus. The mother did not remember talking to the social worker the day before. She then stated she did not feel well and started to have a seizure, though the social worker questioned whether the seizure was genuine. When the social worker asked the mother if she should call 9-1-1, the mother became outraged and stated that, if Titus was taken from her, she would kill herself. The social worker called for an ambulance, and the mother was taken to the hospital. Titus was taken into emergency custody by the department.
The department filed the current care and protection petition on December 24, 2015, and prepared a service plan. The mother did not comply with any aspect of her plan. In June of 2016, she revoked her release authorizing the department to obtain drug screens and treatment information from her drug treatment provider. Among the limited number of screens that the mother provided directly, one was positive for barbiturates. She stopped seeing her substance abuse counsellor after six weeks and did not develop a relapse prevention plan. She did not complete a psychological evaluation or attend therapy and stopped taking both her antiseizure and psychiatric medications in the months leading up to trial. Despite not taking her medications, the mother missed multiple appointments with her neurologist and failed to create a safety plan to cope with future relapses or seizures. She also failed to meet with a parent aide, did not make an effort to understand Titus's special needs, did not attend his doctor's appointments, and refused to cooperate with the department, including by not allowing the social worker to conduct a home visit for over a year. Though the mother eventually allowed the social worker to visit her home (a few days before trial), the home did not have sleeping space or a bed for Titus. In addition, the mother was sharing the home with her boy friend, who had recently relapsed.
Discussion. 1. Unfitness. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "The finding of parental unfitness by clear and convincing evidence is the 'critical inquiry.' "[4] Adoption of Nancy, 443 Mass. 512, 515 (2005), quoting Adoption of Peggy, 436 Mass. 690, 701, cert. denied sub nom. S.T. v. Massachusetts Dep't of Social Servs., 537 U.S. 1020 (2002).
The judge's finding here was based on a number of factors, which together establish the mother's unfitness by clear and convincing evidence.[5] As the judge concluded, the mother was unable to take care of her own needs, let alone those of Titus, or maintain stability in her life since Titus was removed from her care. The mother's longstanding issues with drug and alcohol use went unaddressed during the course of two care and protection proceedings. She did not engage in mental health services, despite her numerous diagnoses and history of psychiatric hospitalizations. Nor did she address her seizure disorder, instead stopping her medications and failing to see her neurologist. Though the mother acknowledged that she is "not in her right mind" for days after a seizure, she did not develop a safety plan for Titus. The mother was also unable to obtain adequate stable housing for Titus; she "bounc[ed] [a]round from one place to another" and, at the time of trial, was living in a home that was not appropriate for him. Furthermore, the mother failed to comply with her service plan tasks, which were designed to address these parental shortcomings.
In addition, the judge had to take into account Titus's special needs. "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). The judge found that Titus has significant developmental delays. When he entered foster care at almost four years old, he was not toilet trained and had a limited vocabulary and severe tantrums. He tested at the level of a thirty month old child; a speech and language evaluation revealed he was significantly below average in all assessment areas; and he had a full scale IQ of fifty-six. At the time of trial, Titus was more than two years developmentally behind other children his age. The mother did not work with Titus's service providers to gain an understanding of his needs and learn how to support his progress.
All of these factors, taken together, clearly and convincingly establish that the mother is unfit to parent Titus. Because the judge was also warranted in concluding that the mother would not become fit in the foreseeable future, the judge did not abuse her discretion in terminating the mother's parental rights.
2. Reliance on evidence relating to another child. The mother argues that the judge erred by relying on evidence from an earlier care and protection proceeding concerning the mother's older child, Amy.[6] In particular, the mother argues that the judge should not have considered the "record review" portions of reports submitted by department investigators in conjunction with that proceeding. The mother, however, did not move to exclude those portions of the reports and has thus waived her objection on appeal. See Adoption of Kimberly, 414 Mass. 526, 534-535 (1993).
In any event, the judge's consideration of the evidence concerning Amy did not constitute reversible error. A parent's history of care for another child is a relevant statutory factor. See G. L. c. 210, § 3 (c ) (ii). Furthermore, the evidence was not necessary to the judge's ultimate conclusion. It was but one of many factors, which, as explained above, together provide clear and convincing evidence of the mother's unfitness. See Adoption of Kimberly, 414 Mass. at 535.
3. Adoption plan. The mother contends that the adoption plan put forward by the department lacked sufficient content for the judge to meaningfully evaluate whether the plan met Titus's best interests. But although the department had not identified a preadoptive family at the time of trial, "[a] fully developed adoption plan, while preferable, is not an essential element of proof in a" termination of parental rights proceeding. Adoption of Paula, 420 Mass. 716, 722 n.7 (1995). The department presented testimony from an adoption social worker that no family members had come forward as an adoptive resource, that Titus was in a specialized foster home because of his global developmental delays, and that she discussed Titus's "limitations and the needs that he's going to have" with several potential adoptive parents. The judge credited the adoption worker's testimony and found that Titus would need extra services and would need to be placed in a specialized adoptive home.[7] As "the department could not do more than outline in general terms its plans for [Titus]," the judge did not abuse her discretion in approving the plan. Id.
4. Postadoption visitation. Finally, the mother contends that the judge abused her discretion in not ordering postadoption visitation. "An order for postadoption visitation is not warranted in the absence of a finding that a significant bond exists between the child and a biological parent ...." Adoption of John, 53 Mass. App. Ct. 431, 439 (2001). Here, the judge found that "[t]here is no evidence that a significant relationship exists between [the] [m]other and [Titus]." It was therefore within the judge's discretion not to order postadoption visitation.[8]
Decree affirmed.

The putative father did not attend trial and did not appeal from the decree terminating his parental rights.

The mother makes no independent argument that termination of her parental rights was not in Titus's best interests.

The mother challenges several of the judge's subsidiary findings, claiming that they are clearly erroneous. After reviewing each of those challenges, we conclude that any errors in the subsidiary findings are minor and do not detract from the judge's ultimate determination of unfitness. See Adoption of Peggy, 436 Mass. at 702.

A pseudonym. In May of 2012, the mother's parental rights as to Amy were terminated.

Though the judge referred to finding a specialized "foster" home, this was plainly a scrivener's error.

The judge did allow "yearly letters and pictures" between the mother and Titus. The mother argues that this order is too vague to be implemented because it is lacking in "practical details." But because a preadoptive family had not been identified, the judge was not in a position to enter a more specific order. Once a family is identified, the judge has the authority to reassess whether the visitation order is in Titus's best interests. See Adoption of Vito, 431 Mass. 550, 557 n.15 (2000).